**LEASAU L. K. ESEROMA, Plaintiff,**

v.

**PAOPAO FARESA (County Chief of Fitiuta County), LUTU FUIMAONA (President of Senate), and LEFITI FA'AFETAI, Defendants.**

High Court of American Samoa
Trial Division

CA No. 05-97

February 27, 1997

Before KRUSE, Chief Justice, and LOGOAI, Chief Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel:      For Plaintiff, Marshall Ashley
For Defendants, Paopao Faresa, Henry W. Kappel, Assistant Attorney Gnereal
For Defendants Lutu Fuimano and Lefiti Fa'afetai, Arthur Ripley, Jr.

## OPINION AND ORDER

On January 9, 1997, plaintiff Leasau L.K. Eseroma ("Leasau") brought this action for a declaration that he is the duly elected Senator from Ta'u County and an injunction enjoining defendants Paopao Faresa ("Paopao"), Lutu Fuimaona ("Fuimaono"), and Lefiti Fa'afetai ("Lefiti") from allowing Lefiti to serve as the Senator from Ta'u County. On February 11, 1997, this Court, pursuant to T.C.R.C.P. Rule 65(a)(2), consolidated the hearing on Leasau's application for a temporary injunction with the trial on the merits. The Trial began on February 12 and was completed on February 18, 1997.

## FINDINGS OF FACT

Ta'u County is located on the Island of Ta'u, which in turn includes the Villages of Luma and Si'ufaga and the Settlement of Amouli. Fitiuta County and Village and Falesao County and Village are also located on Ta'u Island.

Leasau and Lefiti are *matai* or "titled chiefs" from Ta'u County and

Village. On December 7, 1996, some but not all of the *matai* from Ta'u county and Village met in Ta'u Village to discuss the election of a senator from Ta'u County to the next Senate of the Legislature of American Samoa for the four-year term from 1997 to 2000. Ta'u County Chief Nua To'atolu ("Nua") called the meeting. Lefiti and other high-ranking *matai* from Ta'u County and Village were not notified of the meeting, because Nua believed that the Ta'u County Council had "ousted" or "ostracized" these *matai*. Those *matai* invited to the December 7 meeting discussed at length the matter of the Senate election and ultimately agreed to support Lesau's candidacy.

On December 14, 1996, the County Councils of Fitiuta, Faleasao and Ta'u Counties met in Fitiuta to discuss the election of senators to represent the three counties. The Fitiuta *to'oto'o* or "Manu'a orators" presided at this meeting. Present were Ta'u County and Village *matai* who had voiced support for Leasau at the December 7 meeting, as well as Lefiti and other allegedly "ousted" Ta'u County and Village *matai*. At one juncture, a *matai* in attendance suggested that Lefiti should hold one of the Senate seats. Nua objected, claiming that the "true" Ta'u County Council had selected Leasau at the December 7 meeting, and that Leasau must therefore be elected to the Senate seat traditionally reserved for Ta'u County. However, those present at the December 14 meeting continued to "share ideas" regarding the election of Senators. Toward the end of the meeting, *to'oto'o* Laapui from Fitiuta Village and County announced his perception that the three counties had decided to send Lefiti and Moaali'itele Tu'ufuli, a *matai* from Fitiuta County and Village, to the Senate. Nua, Leasau, and their supporters then left the meeting in protest over Lefiti's election. The remaining council members discussed the matter further for a short period of time, and then Laapui reitereated his statement that the three counties favored Lefiti and Moali'itele as their Senators. Paopao, as the Fitiuta County Chief, was directed to certify to the Senate that Lefiti and Moali'itele had been elected by the three counties of Ta'u island. He was the only county chief who was present throughout the meeting.[1]

When Leasau later learned that Lefiti was preparing to take the Senate seat, Nua lodged objections with the Secretary of Samoan Affairs. Lutu, however, accepted Lefiti's certification and placed Lefiti's name on the Senate roll.

On the opening day of the Senate, Leasau arrived to take the Senate seat that he believed he possessed, but the Senate did not allow him to assume the seat that Lefiti occupied. This action followed.

---

[1] The Faleasao County Chief did not attend the meeting. Nua left the meeting before it concluded.

## DISCUSSION

Article II, Section 4 of the Revised Constitution of American Samoa ("Revised Constitution") prescribes the manner in which individuals are to be elected to the Senate of the Legislature of American Samoa. This section provides that "Senators shall be elected in accordance with Samoan custom by the county councils of the counties they are to represent, the number of senators from a county or counties to be as indicated: Fitiuta, Faleasao, and Ta'u, two senators; ...." Though Article II, Section 22 of the Revised Constitution grants the Senate exclusive authority to determine the results of an election occurred according to constitutional requirements. *See Meredith v. Mola,* 4 A.S.R. 773, 780 (Trial Div. 1973). Thus, we examine the narrow questions of (1) whether an election of senators was held on December 14, 1996 "by the county of councils of the counties they are to represent," and (2) "in accordance with Samoan custom."

■ First, the Revised Constitution states that two senators shall represent the counties of Fitiuta, Faleasao, and Ta'u. The Revised Constitution does not allocate one senator to Ta'u County and another senator to Fitiuta and Faleasao Counties. Thus, for anyone from the Island of Ta'u to have a rightful claim to a Senate seat, the individual must be able to show that the Fitiuta, Faleasao and Ta'u County Councils—the three "county councils of the counties [the individual is] to represent"—had an opportunity to participate meaningfully in the election process. *See Mauga v. Lutu,* 10 A.S.R.2d 115, 120 (Trial Div. 1989) (rejecting the proposition that an electoral body can delegate election of a Senator to a sub-division); *Meredith,* 4 A.S.R. at 783 (requiring that *matai* from all villages participate in the election of a senator by the larger electoral body). In the present case, the county councils of Fitiuta, Faleasao and Ta'u Counties met on only one occasion—on December 14, 1996, in Fitiuta, and reached a decision on the next senators to represent the three counties.[2]

---

[2] Since both of the Ta'u county councils factions had an opportunity to participate meaningfully in the December 14 meeting, we need not determine the membership of the "true" Ta'u County Council. Nevertheless, we feel compelled to note that the deep rift between the respective camps of *matai* is a profound tragedy, and a sad commentary on the current state of the *fa'a Samoa* in the greater Village of Ta'u. We concur in the opinion expressed in *Meredith,* that Senate election disputes generally should "be settled by the county councils according to the prevailing custom without litigation" and that "[w]hen the Court is compelled to intervene,...county harmony is dashed and further disunity fueled." 4 A.S.R. at 783.

■ Second, while the Revised Constitution does not specify those Samoan customs that govern the election of Senators, and the courts have been reticent to outline a single constitutionally permissible method for electing Senators, this Court has provided some guidelines for distinguishing methods that are consistent with Samoan custom from those methods that are inconsistent with Samoan custom. Permissible methods of electing Senators include, but *are not limited* to "voice vote, written ballot, computation of number of speakers for each candidate, and consensual agreement." *Meredith*, 4 A.S.R. at 781. Impermissible methods of electing Senators include, but are not limited to appointment of the Senator by one powerful *matai*, *id.*, and delegation of the decision to a subdivision of the deliberative body constitutionally assigned the responsibility of electing senators. *Mauga*, 10 A.S.R.2d at 120.

■ The preponderance of the evidence at the trial indicated that at the December 14 meeting, many *matai* voiced their thoughts and opinions on the issue of who should represent the three counties in the Senate. Both parties agree that extensive "sharing of ideas" is a crucial component of the *fa'a Samoa*. Furthermore, the evidence indicated that *to'oto'o* Laapui gleaned from the myriad of speeches the prevailing mood of the assembly, so that when he announced that the three counties had chosen Lefiti to be one of the Senators, he was expressing the collective will of the electoral body, not "inject[ing] his own selection as senator." *Meredith*, 4 A.S.R. at 781. The fact that certain *matai* from Ta'u County left the meeting after registering an objection does not alter the Court's conclusion, for a decision "in accordance with Samoan custom" need not receive unanimous support.[3]

■ Therefore, we reject Leasau's claims that the election on December 14 was unconstitutional, and instead conclude that the election resulted from a decision of the three county councils of Fitiuta, Faleasao and Ta'u Counties on the next senators to represent the three counties that was reached "in accordance with Samoan custom." We further hold that Paopao, as the Fitiuta County Chief, simply carried out his ministerial duty of certifying the results of that election. REV. CONST. OF AM. SAMOA, art. II, § 4. Only the Senate, however, can judge the results of the election. REV. CONST. OF AM. SAMOA, art. II, § 22; *Meredith*, 4 A.S.R. at 780.

■ In contrast, Leasau's claim of entitlement to a Senate seat relies on the proposition that the Ta'u County Council has a "customary" right to

---

[3] In support of our assertion that Samoan custom does not demand universal approval, we note that in *Meredith*, the court authorized election by "voice vote, written ballot, [and] computation of a number of speakers for each candidate"—methods of decision-making that require the support of more than one but less than all. 4 A.S.R. at 781.

meet independent of the Fitiuta and Faleasao County Councils and to elect a senator to represent all three counties. First, we find as a factual matter that the Fitiuta and Faleasao County Councils never expressly or impliedly agreed to allocate indefinitely to the Ta'u County Council the authority to select one of the two senators from the Island of Ta'u. Moreover, the history of success of candidates from Ta'u County does not translate into a "Samoan custom" permitting Ta'u County to elect one of the two senators without discussing the matter with the County Councils of Fitiuta and Faleasao Counties. Even if the three counties of Ta'u Island had established and maintained a local practice that enabled the Ta'u County Council to elect its own senator, such a practice would be unconstitutional. In *Mauga*, the court held that:

> The contention…that the customary decision-making process, as spoken of in the Constitution, includes an ability in the county to delegate completely that decision making to a mere sub-division of the county is simply untenable. The logical consequence of such an argument is that a new custom—nay even a bad habit or ill conceived practice—inconsistent with the requirements of the Constitution, will have the practical ability of repealing explicit and unambiguous provisions of the Constitution.

10 A.S.R.2d at 117. We will not make a "mockery of the Constitution," *id.*, by suggesting that the Ta'u County Council alone can elect a senator to represent three counties, when the Constitution says that senators shall be elected by the "counties they are to represent." Leasau's claim to the Senate seat is, therefore, without merit.

Conclusion and Order

After careful review of the text of the Revised Constitution of American Samoa, relevant case law, and the evidence presented at trial, we declare that on December 14, 1996, the County Councils of Fitiuta County, Faleasao County, and Ta'u County held an election of the two senators to represent the three counties in accordance with Article II, Section 4 of the Revised Constitution. We further declare that Paopao properly certified the results of that election. The Senate, however, is the exclusive and final judge of the results of that election.

Leasua's prayer for declaratory and injunctive relief is denied.

It is so ordered.